Dennis Wayne ENOS, Appellant,

v.

The STATE of Texas, State.

No. 2–92–100–CR.

Court of Appeals of Texas,
Fort Worth.

July 30, 1993.

Rehearing Overruled Aug. 31, 1993.

John C. Beatty, Allan K. Butcher, Fort Worth, for appellant.

Tim Curry, Dist. Atty., Betty Marshall and Charles M. Mallin, Asst. Chiefs of Appellate Section, Lynn Allison, Bill Durkin, Mike Parrish, Asst. Dist. Attys., Fort Worth, for State.

Before LATTIMORE, DAY and CLYDE R. ASHWORTH (Retired, Sitting by Assignment), JJ.

## OPINION

LATTIMORE, Justice.

Dennis Wayne Enos pleaded guilty to one count of aggravated robbery with a deadly weapon, pleaded true to an enhancement paragraph and was sentenced by a jury to seventy-five years in the Institutional Division of the Texas Department of Criminal Justice. Enos raises seven points complaining the trial court erred as follows: (1) by refusing to excuse three veniremen who stated they were biased against a law upon which Enos was entitled to rely; (2) by refusing to excuse three veniremen who stated they would not consider drug addiction as mitigating evidence when assessing punishment, thereby subjecting Enos to cruel and unusual punishment; (3) by including an instruction to the jurors on an issue not before the jury for resolution and not supported by any evidence; (4) by refusing to allow Enos to examine a "victim impact statement" written and signed by a witness after such witness had testified on direct examination by the State; (5) by refusing to allow Enos' attorney on appeal to examine the "victim impact statement" that was the subject of a "Gaskin" request at trial, thereby depriving Enos of

effective assistance of counsel on appeal; (6) by excusing venireman Fredrick Scott on the basis of a prior theft conviction, although there was no evidence to support such a conclusion; and (7) by allowing the State in its final arguments to urge the jurors to punish Enos for an additional offense.

We affirm.

■ Enos addresses his first two points together, and as such we will do the same. Enos' first two complaints relate to his request to strike three venireman for cause who said they could not consider drug addiction as a mitigating factor in assessing punishment, which resulted in Enos using peremptory strikes, leaving him with venireman Barbee who stated she would have difficulty in fairly considering addiction as a mitigating factor. Enos then maintains the end result of this process subjected him to cruel and unusual punishment.

■ As the State correctly points out, to warrant a reversal for the denial of a valid challenge for cause an appellant must show: (1) the voir dire of the individual venireman was transcribed; (2) the defendant asserted a clear and specific challenge for cause clearly articulating the grounds therefore at trial; (3) after denial of the challenge, the defendant used a peremptory strike on that juror; (4) all peremptory challenges were exhausted; (5) a request for additional peremptory challenges; and finally, (6) that an objectionable juror sat on the case by pointing out he is being forced to try the case with a juror against whom he would have exercised a peremptory strike if he had one. *Jacobs v. State,* 787 S.W.2d 397, 405 (Tex.Crim.App.1990) (citing *Harris v. State,* 790 S.W.2d 568, 581 (Tex.Crim.App.1989)). The State argues that Enos did not properly preserve error because he did not point out to the trial court that he was being forced to try the case with a juror he would have removed with a peremptory challenge had he had one. We agree. Although defense counsel went so far as to request additional peremptory challenges, he did not assert that he would be trying the case with an objec-

tionable juror against whom he would have exercised a peremptory strike had he had one. Thus, we must overrule points one and two.

■■■ Enos maintains in his third point the trial court erred by including an instruction, over his timely objection, which allegedly injected the issue of Enos' sanity when the only issue before the jury was appropriate punishment. Enos complains of the following instruction:

> The Defendant has persisted in entering such pleas, notwithstanding the Court, as required by law, has admonished him of the consequences of the same; *and it plainly appearing to the Court that the Defendant is sane*, and that he is not influenced to make these pleas by any consideration of fear, nor by any persuasive or delusive hope of pardon prompting him to confess his guilt or prompting him to plead true, and that these pleas are free and voluntary, said pleas are by the Court received and the jury is instructed to find the Defendant guilty as charged in the indictment and that the allegations in the Enhancement Count of the indictment are true.... [Emphasis added.]

We disagree with Enos' contention. The court cannot accept a guilty plea unless it appears the defendant is mentally competent and the plea is voluntary. TEX.CODE CRIM.PROC.ANN. art. 26.13(b) (Vernon 1989). However, the court need not inquire into this matter unless brought into issue. *Kuyava v. State*, 538 S.W.2d 627, 628 (Tex. Crim.App.1976). In this case, Enos is correct that no issue was made of his sanity; however, the court in giving this instruction was merely giving the proper instruction regarding Enos' mental competence as to his guilty plea. Although the court chose the word "sane" rather than using "mentally competent" we find this presents no error. The *Kuyava* court addressed the same issue with regard to the use of these same words in a judgment and found no error was present. *Id.* at 629. The court reasoned prior versions of article 26.13 used the word "sane" rather than "mentally competent" and held those words to be

synonymous. *Id. See also Adams v. State*, 745 S.W.2d 536, 538 (Tex.App.— Houston [1st Dist.] 1988, no pet.). Moreover, the trial court in this case offered to change the word "sane" to "mentally competent" and counsel for Enos refused and stated he had the same objection. The way the instruction was worded, however, does not inject the issue of sanity and merely indicates a finding of Enos' mental competence with regard to his guilty plea, and not to his state of mind at the time of the offense. The third point of error is overruled.

■■■ In his fourth and fifth points, Enos complains the trial court erred by refusing to allow Enos to examine a "victim impact statement" written and signed by Shirley Mimms, a witness for the State, after her direct examination by the State. Moreover, Enos complains the trial court erred by refusing to allow Enos' counsel on appeal to examine the "victim impact statement" that was the subject of a "Gaskin" request at trial, thereby depriving Enos of effective assistance of counsel on appeal.

The testimony of the robbery victim, Shirley Mimms, indicated that she had filled out some paperwork for the District Attorney's office. After her direct testimony, defense counsel requested a copy for purposes of cross-examination. The State objected and replied that the statement was protected by statute. The trial court sustained the objection, and after the noon recess before the jury returned, the court noted in the record that the State had provided the court with a copy of the victim impact statement from Shirley Mimms and it had reviewed it, finding that it contained no mitigating or exculpatory evidence. Enos' counsel then requested the statement be included in the record and sealed if necessary. The trial court complied.

The Code of Criminal Procedure provides: "A victim impact statement is subject to discovery under Article 39.14 of this code before the testimony of the victim is taken only if the court determines that the statement contains exculpatory material." TEX.CODE CRIM.PROC.ANN. art. 56.03(g) (Vernon Supp.1993). Enos argues this statute

is inapplicable because this was not a case where pre-trial discovery was employed but a case where the document was being requested after the victim's testimony for purposes of cross-examination, and therefore, was subject to a "Gaskin"[1] request and Rule 614(a) of the Texas Rules of Criminal Evidence[2]. We disagree. Although no Texas cases speak directly to this issue, we find that allowing the defendant to obtain a copy of the victim impact statement through this means would subvert the whole purpose behind the statute which provides for its discovery. If we were to sustain Enos' point, defendants would always be able to obtain the victim impact statement by merely waiting to request such after the testimony of the victim at trial.

Moreover, even if we were to ignore the fact that this was not a pre-trial request, article 56.03(g) of the Code of Criminal Procedure specifically provides the statement is discoverable only if it contains exculpatory evidence. The trial court determined that the victim impact statement of Mimms contained no exculpatory material, and from our own examination of the document, we agree. Counsel for Enos argues he is "not comfortable with this 'trust me' school of jurisprudence and suggests to this Court that neither the trial court or the learned members of this Court are in a position to evaluate the value or use of this statement in the cross-examination or impeachment of the witness." However, this subverts the discovery rule as well. Why would the judge's determination that the victim impact statement contained no exculpatory evidence be any less valid after trial has begun than during pre-trial? We can find no reason for such an assertion. In addition, we would note that Enos pled guilty and was only seeking punishment from the jury; so whether the statement contained exculpatory evidence or not is completely irrelevant, especially in light of Enos' theme throughout his entire brief which argues his drug use was a mitigating factor. Given our analysis of this point of error, we cannot see how Enos was deprived of effective assistance of counsel because he has not been able to review the victim impact statement. Points four and five are overruled.

■ In point six Enos complains the trial court erred in excusing venireman Fredrick Scott on the basis of a prior theft conviction, although there was no evidence to support such a conclusion. The following exchange took place during voir dire:

THE COURT: And your name is Fredrick Scott, Jr.?

VENIREMAN SCOTT: Yes.

THE COURT: All right, Mr. Scott.

VENIREMAN SCOTT: Okay. It been—I think it was about in '78. I took some glubs (sic) out of the 7–Eleven.

THE COURT: Did they apprehend you?

VENIREMAN SCOTT: Yeah.

THE COURT: And did you pay a fine, or what happened back there?

VENIREMAN SCOTT: I think I did a month in the county jail.

THE COURT: For that offense?

VENIREMAN SCOTT: Yeah, I think I did. I'm not sure. I don't remember. And that's all.

THE COURT: That's here in this county?

VENIREMAN SCOTT: Yes, sir.

And that's all.

THE COURT: Mr. Scott, thank you for calling that to our attention, and we'll let you go ahead and have a seat back there, please sir.

[DEFENSE COUNSEL]: May I ask a question?

THE COURT: Sure.

1. *Gaskin v. State,* 172 Tex.Crim. 467, 353 S.W.2d 467 (Tex.App.1961).

2. Rule 614(a) provides:
   After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and his attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.
   Tex.R.Crim.Evid. 614(a).

[DEFENSE COUNSEL]: Mr. Scott, do you ever recall going to court on that?

VENIREMAN SCOTT: No, sir, I don't remember.

[DEFENSE COUNSEL]: Do you recall ever pleading guilty to that?

VENIREMAN SCOTT: Yes, sir, I pled guilty to it 'cause I did it.

[DEFENSE COUNSEL]: In court? You did it in court?

VENIREMAN SCOTT: I don't remember. I don't remember, it been so long.

[DEFENSE COUNSEL]: What is your date of birth?

VENIREMAN SCOTT: Nine—

THE COURT: The month you spent in jail, was that before or after you think you plead guilty?

VENIREMAN SCOTT: It was during the time that I did it.

THE COURT: In other words, you think that was part of your punishment?

VENIREMAN SCOTT: Well, that's all the time that they gave me.

THE COURT: But you had somebody tell you that you were to do a month in the county jail?

[DEFENSE COUNSEL]: Did you have a lawyer to represent you?

VENIREMAN SCOTT: I don't remember, but I know I did. I did do that time. It been so long ago till I forgot.

I have a plate in my head, and, well, I got bad—

THE COURT: All right, Mr. Scott, thank you, sir. Appreciate it. You can have a seat back there.

. . . .

VENIREMAN SCOTT: . . . .

But this happened back then, about '78, and I haven't took nothing or did anything else like that since.

[PROSECUTOR]: On his questionnaire, he lists himself, Your Honor, as a disabled person.

State, at this time, would challenge this prospective juror because he's not—

THE COURT: On the basis of what Mr. Scott has told me, I feel like that he is disqualified to serve.

. . . .

VENIREMAN SCOTT: Yes, sir. I just wanted to bring that to y'all attention.

THE COURT: Yes, sir. Thank you.

VENIREMAN SCOTT: I—but I learned my lesson. (Venireman Scott seated.)

[DEFENSE COUNSEL]: Your Honor, we would object to the Court's excusing this particular juror, Mr. Scott, for the reason that we don't think that what he has told us is sufficient to prove that he had some kind of conviction.

Furthermore, there may be some question as to whether or not he had a valid conviction, that he recalls not having an attorney to represent him. This may have been in the days when misdemeanor judges would bring people down and either they could plead without a lawyer, one, or number two, they just purged the jails on the jail release after they have been serving for a while, I don't think the information is clear that he is disqualified as a matter of law.

THE COURT: I'll overrule your objection.

■■■■ A venireman is absolutely disqualified from jury service when he has been convicted of any theft or felony. *See* TEX.CODE CRIM.PROC.ANN. arts. 35.16(a)(2), 35.19 (Vernon 1989). Whether a venireman is absolutely disqualified is a question of fact for the trial court to determine. *See Hammond v. State*, 799 S.W.2d 741, 744 (Tex.Crim.App.1990). Moreover, even if there is evidence which may be conflicting, a trial court has discretion to find facts which may or may not justify a challenge for cause, and this is also so although the purported basis of the challenge constitutes an absolute disqualification. *Id.* at 744–45.

The Court of Criminal Appeals had an opportunity to address a fact situation similar to the present case in *Frame v. State*, 615 S.W.2d 766 (Tex.Crim.App. [Panel Op.] 1981). In *Frame* a venireman was absolutely disqualified because of a theft conviction. *Id.* at 768. After voir dire and before any exercise of challenges by either the State or the defense, the trial court had

a discussion with a venireman in which the venireman informed the court he had been convicted of theft when he was thirteen to fourteen years old. The venireman did not remember exactly when he was convicted and said that a true court was not involved in his conviction but that a corporation court in North Richland Hills was involved. The venireman also remembered paying a fine, but was uncertain of the exact amount. *Id.* The venireman recalled appearing before a judge but could not recall his name. At that point the trial court asked counsel for both sides if they had any objection to excusing the venireman, to which the defense replied he did because he did not believe the venireman was absolutely disqualified. The State responded that they believed the venireman was absolutely disqualified. *Id.* The trial court then *sua sponte* excused the venireman over the timely objection of the defense. *Id.*

On appeal, the Court of Criminal Appeals had to determine whether the venireman had a valid conviction for theft. The Court examined the possible statute which the venireman could have been convicted under to determine whether the venireman, because he would have been a juvenile, had sufficient discretion to understand the illegality of the act constituting the offense. *Id.* at 769–70. The Court found he could have had sufficient discretion for a valid conviction and determined he could in fact have been adjudged a "delinquent child." *Id.* at 770. The Court went on to hold that where the record is silent, there is a presumption that procedural rules were complied with. *Id.* Therefore, the trial court had not erred in *sua sponte* excusing the venireman. *Id.*

Although the *Frame* facts are not exactly on point, we find them helpful in that the venireman in *Frame* could not remember the exact details of his conviction, only that he was convicted of theft, and because the trial judge excused the venireman *sua sponte*. We disagree with Enos' position that the venireman in *Frame* positively informed the court of his conviction whereas in the present case venireman Scott did not. In the case at bar, venireman Scott could not remember the details of a conviction, only that he was apprehended, pled guilty and spent time in jail for stealing items from the 7–Eleven. We find that these were adequate facts for the trial judge, in his discretion, to find the venireman was absolutely disqualified because of a theft conviction, and that the trial court could presume, because the record was silent, all procedural rules were complied with.

We also note that Enos complains the State did not meet its burden in seeking the exclusion of venireman Scott; however, we need not address this argument because we find that trial court excused the venireman *sua sponte*. Point of error six is overruled.

■ In his last point Enos contends the trial court erred by allowing the State in final argument to urge the jurors to punish Enos for an additional offense. Specifically, Enos complains of the following:

> [PROSECUTOR:] You can consider the fact that this just wasn't just any place that he robbed. This was a bank. He did a bank robbery in a professional manner. He's in the big leagues, and that deserves a big league punishment.
> *You can also consider the fact that not only did he rob at gunpoint two tellers, but there were—*[Emphasis added.]

At this point, defense counsel objected stating the State had asked for punishment beyond what was charged in the indictment.

■ We disagree with Enos' contention. The State and Enos correctly point out the State may ask the jury to consider certain collateral circumstances and events as aggravating factors in determining punishment. *Lomas v. State,* 707 S.W.2d 566, 568–69 (Tex.Crim.App.1986). The State, however, may not specifically ask the jury to assess punishment for additional crimes. *See Brown v. State,* 530 S.W.2d 118, 120 (Tex.Crim.App.1975).

The State argues testimony was elicited concerning Enos' moving to the teller window next to Shirley Mimms' window and pointing the gun and getting money from another teller, Joy Swartz. As such, the

prosecutor's referral to Enos "[robbing] at gunpoint two tellers" was not specifically asking the jury to punish for an additional offense, but merely asking the jury to consider the circumstances surrounding the offense. Point of error seven is overruled.

The judgment of the trial court is affirmed.